IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

RHONDA HUEY,                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 4:15-CV-037-SAA

COMMISSIONER OF SOCIAL SECURITY,                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff Rhonda Huey has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her Title II application for a period of disability (POD) and disability insurance benefits (DIB), as well as her Title XVI application for supplemental security income (SSI) under the Social Security Act. Plaintiff protectively filed applications for benefits on September 27, 2012 alleging disability beginning on November 1, 2011. Docket 12, pp. 352-65. The agency administratively denied the plaintiff's claim initially and upon reconsideration. Plaintiff then requested an administrative hearing, which an Administrative Law Judge (ALJ) held on December 17, 2014. *Id.* at 23-65. The ALJ issued an unfavorable decision on January 14, 2015 (*Id.* at 8-22), and the Appeals Council denied plaintiff's request for a review on February 9, 2015, *Id.* at 1-3. Plaintiff was unrepresented through the application process. Now being represented by legal counsel, plaintiff timely filed the instant appeal from the decision, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

1

## I.     EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; 416.920. The burden to prove disability rests upon plaintiff through the first four steps of the process, and if plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, the plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 416.920(b). Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit[] [her] physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c); 416.920(c). At step three the ALJ must conclude that the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d); 416.920(d). If the plaintiff does not meet this burden, at step four she must prove she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e); 416.920(e). Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, she is capable of performing other work. 20 C.F.R § 404.1520(g); 416.920(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that she cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## II.     FACTS

Plaintiff was born July 2, 1976 and was 38 years old at the time of the ALJ hearing. Docket 12, pp. 30, 352. She is considered a younger individual for the purpose of determining

disability benefits. Plaintiff has received her GED [*id.* at 31], and her past relevant work was as a dispatcher and billing clerk. *Id.* at 51. She contends she became disabled before her application as a result of carpal tunnel impingement, chiari malformation, stomach disorders, problems with gas, severe acid reflux, heart disorders with chest pains, chronic sinus problems, and severe back problems. *Id.* at 427. The ALJ determined that plaintiff suffered from "severe" impairments of "fibromyalgia, disc herniation at C5-6, chiari malformation, obesity, depression, and anxiety " (*id.* at 11), but that her impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 12.

Based upon testimony by the vocational expert [VE] at the hearing, and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity [RFC] to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally, and ten pounds frequently. She can stand and/or walk six hours out of an eight-hour workday [and] can also sit six hours out of an eight-hour workday. She must never climb ladders, ropes and scaffolds. [She] is able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She is capable of engaging in appropriate interactions with coworkers and supervisors on a basic, non-personal level [and] is limited to jobs requiring only occasional interaction with small groups of the general public . . . and jobs with no production rate or paced work.

Docket 12, p. 13. During the hearing, the VE testified that a person with plaintiff's RFC would not be able to perform her past relevant work as a dispatcher but could do so as a billing clerk. *Id.* at 52. The ALJ then asked the VE whether such a person could perform the plaintiff's past relevant work if the ALJ imposed additional limitations of no repetitive tasks and no production rate or pace work and if the person were capable of performing only jobs which required only

3

occasional decision making with few, if any, workplace changes; the VE testified that such a person could not do so [i*d.* at 53], but even with those additional limitations a person could perform the jobs of assembler, inspector, and housekeeper. *Id.* at 52-53.

Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in describing the intensity, persistence and limiting effects of her claimed symptoms, limitations and subjective complaints. *Id.* at 14. At step four the ALJ rejected plaintiff's claim for disability, concluding that even though plaintiff has severe impairments, based on VE testimony plaintiff could return to her past relevant work as a billing clerk because that job does not require the performance of work-related activities precluded by her RFC. *Id.* at 16.

Plaintiff claims the ALJ erred in failing to fully develop the evidence, not strictly construing 20 C.F.R. 404.1527, and not considering all of the plaintiff's impairments. Docket 18, p. 4.

### III. STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling*

*v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. **DISCUSSION**

### A. Did the ALJ fail to fully develop the evidence?

Citing a non-binding district court case from Pennsylvania, plaintiff asserts that the ALJ failed to "develop the evidence by gathering all 'relevant, probative, and available evidence.'" Docket 18, pp. 4-5. She contends that a "record dump" at or just before the ALJ hearing and the fact that another set of exhibits [Exhibits 13F-23F] was admitted after the hearing illustrate this failure to develop the record. *Id.* at 5. Without explaining how, the plaintiff argues that the introduction of numerous exhibits "at or soon after the hearing" suggests that "the ALJ failed to discover as much as [half] of the sources of claimant's treatment." Docket 25, p. 2. According to plaintiff these events prevented the deferential review reserved for individuals proceeding *pro*

*se* through the disability process. *Id.,* citing *Dombrolowskey v. California*, 606 F.2d 403, 407 (3rd Cir. 1979).

It is, of course, well established that an ALJ has a duty to develop the record fully and fairly and to ensure that her decision is an informed one based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). And if, as here, an individual is *pro se* during the disability process, the ALJ is under a heightened duty to develop the record. *Id.* However, when a plaintiff claims failure to fully develop the record, she must demonstrate that she has been prejudiced by the incomplete record to obtain reversal of the Commissioner's decision. Docket 22, p. 7; *see also Castillo v. Barnhart*, 325 F.3d 350, 351 (5th Cir. 2003). To establish prejudice, "a claimant must show that [s]he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728, citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). Although quite difficult to ascertain from her initial and reply briefs, it appears that plaintiff's claim of prejudice is based on her view that this alleged "record dump" was prohibited by a recent Fifth Circuit opinion in *Sun v. Colvin*. *See* Docket 25, p. 2-3; *see* 793 F.3d 502 (5th Cir. 2015). *Sun* was an appeal by a *pro se* disability applicant which the circuit reversed and remanded for rehearing. *Id.* at 513. The court finds this claim to be without merit.

First, there is no indication that the Commissioner improperly admitted, failed to admit or did not consider any relevant evidence. To the contrary, the record as a whole reveals that the ALJ properly contacted plaintiff's medical sources and even carefully explained to plaintiff during the hearing the types of exhibits and medical evidence contained in the record. Docket 12, pp. 27-29. Plaintiff has not demonstrated that the record is incomplete, much less that there is missing evidence that might have altered the result as required by *Brock*.

Further, plaintiff's allegation that the holding in *Sun* requires reversal is also misguided. The Fifth Circuit noted in *Sun* that the transcript and ALJ's decision made quite apparent that there was very limited, minimal medical evidence and that there had been problems acquiring the proper medical evidence. *See* 793 F.3d at 504-07. The Circuit concluded that evidence later submitted to the Appeals Council was significant enough that it required reconsideration. *Id.* at 512-13. In this case however, plaintiff has provided no proof that any significant medical records have not been included in the record, and there is no indication from the record that all of the evidence was not properly considered in making the ultimate determination. In fact, if anything, the ALJ's reliance on evidence that was admitted after the hearing would indicate that such evidence was properly developed and considered. *See, e.g.*, Docket 12, p. 11 (analysis of records contained in Exhibit 17F), 12 (analysis of records in Exhibit 14F) 15 (analysis of records contained in Exhibit 21F).

### B. Did the ALJ strictly improperly apply 20 C.F.R. 404.1527 to plaintiff's mental impairments?

Plaintiff's next argument is that the ALJ did not strictly construe 20 C.F.R. § 404.1527, which sets out the proper way to evaluate opinion evidence, as it related to plaintiff's mental impairments. Docket 18, pp. 7-9. Plaintiff claims the ALJ was required to rely on Dr. William Cook's opinion because he was an examining physician and the other medical opinions were provided by non-examining physicians. *Id.* The Commissioner responds that the ALJ properly considered plaintiff's mental impairments and all medical opinions in the record, including that of Dr. Cook, under 20 C.F.R. §§ 404.1520a(a)-(b), 416.920a(a)-(b). *See* Docket 22, pp. 13-18.

Dr. Cook completed a consultative report in April 2013. According to plaintiff, "his conclusions . . . showed claimant to be currently disabled." Docket 18, p. 7. Dr. Cook diagnosed plaintiff as suffering from "psychological disorder associated with chronic pain syndrome;

7

antisocial personality disorder; depressive disorder[; and] anxiety disorder." Docket 12, p. 656. According to Cook, "the claimant's ability to perform routine, repetitive work-related tasks seems somewhat doubtful." *Id.* Plaintiff argues that the ALJ should have deferred to this statement because 20 C.F.R. §404.1527(c)(1) "promises that more weight will be given to examining sources than non-examining sources." Docket 18, p. 8. Instead, the ALJ elected to assign Dr. Cook's opinion "little weight." Docket 12, p. 15. Having considered this argument, the court finds that the ALJ's construction of the medical opinion evidence as a whole and her evaluation of Dr. Cook's opinion in light of that evidence were substantially justified.

Rather than relying on Dr. Cook's opinion, the ALJ elected to assign great weight to opinions of Drs. Weiner, Gibson, and Kossman. *Id.* at 15-16. Plaintiff claims that because these opinions were from non-examining sources, the decision to assign Dr. Cook's examining opinion only little weight was not substantially justified. Docket 18, pp. 8-9. Although examining sources are generally given more weight than non-examining sources, plaintiff's argument that such a decision cannot be substantially justified is incorrect.

The Fifth Circuit has held in *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980) that "the reports of physicians who did not examine the claimant, taken alone, 'would not be substantial evidence on which to base an administrative decision.'" Plaintiff contends that *Strickland* mandates deference in this case. However, the Fifth Circuit has distinguished *Strickland* because it involved an ALJ who relied on a non-examining physician's opinion which was based on an examining psychiatric expert's opinion, but which that expert himself had declined to support. *See Rodriguez v. Shalala*, 1994 WL 499764 * 3. The "standard of deference to the examining physician is contingent upon the physician's ordinarily greater familiarity with claimant's" impairments. *Id.* Thus, the standard remains that "although the

8

opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).

Here, the ALJ weighed all of the evidence and found that it supported a contrary conclusion. The ALJ found Dr. Cook's opinion was inconsistent with the medical evidence as a whole, and instead assigned greater weight to the opinions of non-examiners Dr. Roger Weiner, Dr. Madena Gibson, and Dr. Carol Kossman. Docket 12, pp. 15-16. As factfinder, the ALJ has the sole responsibility for weighing the evidence. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Dr. Weiner's medical source statement indicated that plaintiff could lift and carry up to 10 pounds continuously and up to 20 pounds frequently; sit and stand for 8 hours or walk for 6 hours of an 8-hour workday; ambulate without the use of a cane; frequently climb stairs, ramps, ladders, or scaffolds; but should never work at unprotected heights or around vibrations due to her anxiety. Docket 12, pp. 820-25.

The assessments performed by Drs. Gibson and Kossman resulted in similar findings. For instance, Dr. Gibson's RFC assessment determined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently and could sit, stand or walk 6 hours out of an 8-hour work day. Docket 12, p. 239. Dr. Gibson's assessment acknowledged plaintiff's postural limitations by also limiting plaintiff to only occasionally climbing ramps, stairs, ladders, ropes, or scaffolds and balancing, stooping, kneeling, crouching, or crawling. *Id.* at 239-40. And, finally, Dr. Gibson's report stated that due to her depression and anxiety, plaintiff "would function better with some limitations in working directly with the general public[,] especially in large crowds." Docket 12, p. 247. These three consistent examinations illustrate that there was ample contrary

medical evidence for the ALJ not to give Dr. Cook's opinion deference as an examining physician.

Plaintiff 's contention that the ALJ ignored Dr. Cook's opinion is also meritless. Although Dr. Cook appears to have performed the plaintiff's only mental evaluation, the ALJ correctly noted that despite her alleged conditions, claimant appears to have only ever received mental health treatment from her primary care physician and has not sought treatment from any specialist. *Id.* at 12. Indeed, Dr. Cook's diagnoses and other opinions appear to be based almost entirely upon the history provided by plaintiff, with minimal clinical findings underlying his conclusions. The ALJ's discussed Dr. Cook's findings at length and noted that he had concluded that the claimant suffered from "psychological disorder with chronic pain syndrome, antisocial personality disorder and depressive disorder." *Id.* at 11-12. Although she assigned his opinion little weight, she nonetheless ultimately determined that plaintiff suffered from the severe mental impairments of depression and anxiety as well as non-severe antisocial personality disorder. Docket 12, p. 11-12.

In the end, the ALJ gave ample consideration to plaintiff's conditions by acknowledging plaintiff's mental impairments and by limiting her to engaging on a "basic, non-personal level" and to jobs "requiring only occasional interaction with small groups of the general public . . . and jobs with no production rate or paced work." *Id.* at 13. The fact that all three consultative examiners' opinions were similar with regard to plaintiff's abilities and confirms that the ALJ was justified in assigning these opinions great weight and assigning Dr. Cook's opinion little weight. Therefore, despite plaintiff's allegations, the ALJ's decision to weigh the evidence against Dr. Cook's opinion did not exhibit a lack of substantial justification.

### C. Did the ALJ properly consider plaintiff's impairments?

Finally, plaintiff argues that the ALJ failed to properly consider all of her impairments [Docket 18, pp. 5-9; *see also* Docket 25, pp. 3-7] and refers to several instances from the medical record which the ALJ failed to explicitly and particularly discuss. *See* Docket 18, pp. 5-9; *see also* Docket 25, p. 3. As an example of the ALJ's ignoring portions of the record, plaintiff refers to a visit to Delta Regional Medical Center where testing revealed lateral recess stenosis and flattening of the spinal cord at C5-6. Docket 18, p. 6 (citing docket 12, p. 644). According to plaintiff, this medical issue was "overlooked by the ALJ" at step three and may have led to plaintiff meeting Listing 1.04 had it been properly considered. Docket 18, p. 6. Having considered the evidence, the court concludes that the ALJ's failure to discuss explicitly all the medical evidence does not exhibit a failure to consider all of plaintiff's impairments.

Despite plaintiff's assertions, the ALJ properly considered plaintiff's spinal issues in her disability determination. First, the ALJ's analysis specifically mentions the MRI results which the plaintiff claims were overlooked in her step two and three analyses. *See* Docket 12, p. 11 ("claimant underwent an MRI that showed moderate right-sided disc herniation at C5-C6 (Exhibits 10F and 17F)"). Next, the ALJ discussed why plaintiff did not meet the requirements of Listing 1.04. *Id.* at 12 ("claimant's condition does not meet the requirements of Listing 1.04 because she does not have evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication."). And finally, the ALJ not only listed plaintiff's C5-6 disc herniation as a severe impairment [*Id.* at 11], but she also took into account plaintiff's spinal issues in formulating a modified RFC which limited plaintiff's lifting and carrying capacity as well as her ability to perform certain activities such as climbing ladders, ropes and scaffolds, *id.* at 13-16.

Furthermore, the ALJ's decision not to include carpal tunnel syndrome as a severe impairment does not mean, as plaintiff claims, that the ALJ failed to consider her carpal tunnel syndrome because there is no evidence of "Phalen and Tinel testing." Docket 18, p. 5. When the ALJ questioned the plaintiff about this particular impairment during the hearing, the plaintiff indicated that she had suffered from carpal tunnel syndrome since approximately 2002, when she worked at a hospital. *Id.* at 41. Having performed work despite the claimed impairment supports a finding of not disabled. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995), citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 & n. 11 (5th Cir. 1987). Other evidence also supports the ALJ's treatment of plaintiff's alleged carpal tunnel syndrome. For instance, medical records from May 2011 indicate that carpal tunnel syndrome was listed only as "possible" when plaintiff was prescribed wrist braces. Docket 22, p. 10, citing Docket 12, p. 576. And despite having suffered from the condition for so long, plaintiff admitted she had not received any treatment for it other than wrist braces. *Id.* at 42. In addition, plaintiff's medical records indicate that there were many instances over the years where there was no indication of any subjective complaints related to carpal tunnel syndrome by the plaintiff. *See, e.g.*, Docket 12, pp. 77 (treatment from May 2014 in which a laundry list of ailments are listed but which there is no mention of carpal tunnel or anything related to it); 554 (treatment from June 2012 with Dr. Deborah Willis indicates no mention of carpal tunnel-related pain or suffering); and 571 (treatment in 2011 with reports of pain associated with headaches, nasal congestion, and sinuses, but no mention of hand pain or carpal tunnel-related complaints). "The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 167, 165 (5th Cir. 2983).

Finally, plaintiff refers to various other individual instances from the record which the ALJ did not mention but which again do not indicate error. For instance, plaintiff argues the ALJ failed to "analyze" when she was treated for internal medical issues with a colonoscopy at Bolivar Medical Center. Docket 18, p. 6. However, as plaintiff herself indicates, the results of that colonoscopy were negative. *Id.* In another instance, plaintiff asserts that "[b]y October[] 2012, claimant developed severe URI problems" but admits that those issues "came and went frequently." *Id.* These puzzling references do not support a claim of error.

## V. CONCLUSION

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards. The Commissioner's decision is affirmed, and the case is closed. A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 4th day of December, 2015.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE